NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251155-U

NO. 4-25-1155

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 3, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| MICHAEL L. TURNER, | ) | No. 24CF1564 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rudolph M. Braud, |
| | ) | John M. Madonia, |
| | | Judges Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The appellate court affirmed the trial court's order denying defendant pretrial release, holding the trial court did not err by finding that defendant posed a real and present threat to the safety of the community and that this threat could not be mitigated by any condition of combination of conditions of pretrial release.

¶ 2     Defendant, Michael L. Turner, appeals the trial court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)). Defendant argues that the court erred by finding that he posed a threat to the safety of the community that could not be mitigated by conditions of pretrial release. We affirm.

¶ 3                              I. BACKGROUND

¶ 4     On November 21, 2024, defendant, Michael L. Turner, was charged with possession with intent to deliver methamphetamine (720 ILCS 646/55(a)(1), (a)(2)(F) (West

2024)), possession with intent to deliver a controlled substance (cocaine) (720 ILCS 570/401(a)(2)(A) (West 2024)), and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2024)). That same day, the State filed a verified petition to deny defendant pretrial release, alleging defendant had been charged with a detainable offense and his release posed a real or present threat to the safety of any person or persons or the community.

¶ 5            A detention hearing was held that day. The State proffered that defendant had prior felony convictions for possession of a weapon by a gang member and attempted armed robbery. The State asserted that the day before the detention hearing, a search warrant was served at defendant's residence and officers located 6.25 pounds of methamphetamine, 33.2 grams of suspected crack cocaine, 14.8 grams of suspected heroin, and 10.3 grams of pills that were suspected to be ecstasy. The officers also located "just under $8,000 US currency." The State indicated that $80 of the cash recovered was "from a prior controlled buy official advanced funds." The officers also located a Glock 23 pistol. The State asserted that defendant was on parole at the time of the search.

¶ 6            The State argued that defendant was a danger to the community due to the large amounts of dangerous drugs in his possession and the fact that he illegally possessed a weapon as a felon. The State noted that defendant was already being supervised while on parole at the time of the offense, yet he was still able to acquire large amounts of illegal substances and a loaded gun. The State asserted that home confinement and electronic monitoring would have no effect because the illegal items at issue were kept in defendant's residence. The State argued that detention was the only way to "prevent the community from potential harm by [defendant]."

¶ 7            Defense counsel asserted that defendant had no prior convictions for drug offenses. Counsel stated defendant was set to be discharged from parole the day after the search

warrant was executed and "had successfully complied with electronic monitoring, treatment, and everything parole asked of him." Counsel asserted that defendant could live with his mother, rather than at the residence where the search warrant was executed, and could be placed on home confinement and electronic monitoring. Counsel noted that defendant was employed and had custody of his young child approximately half the time.

¶ 8    The trial court found the State had met its burden of showing the proof was evident or presumption great that defendant committed detainable offenses. The court noted the State's proffer indicated that law enforcement officers executed a search warrant on defendant's parole address and located methamphetamine, crack cocaine, fentanyl, 3,4-methylenedioxymethamphetamine, money, and a firearm. The court stated: "[Defendant] is certainly, based on this activity, is a danger to the public at large." The court also noted defendant's prior convictions. The court then advised defendant that he was being ordered detained.

¶ 9    The trial court entered a written order finding the State had proven by clear and convincing evidence that defendant had committed a detainable offense, defendant's pretrial release posed a real and present threat to the safety of the community based on the specific articulable facts of the case, and no conditions of release could mitigate this threat. The order stated the court concluded that no conditions of release could mitigate the real and present threat defendant posed to the safety of the community due to the nature and circumstances of the offense, his prior criminal history, and the fact that he was on parole at the time of the offense.

¶ 10    On February 4, 2025, the trial court held a hearing at which defense counsel argued there were "a number of changes [to] [defendant's] prior circumstances" concerning pretrial release. Among other things, counsel proffered a notarized statement dated December 18,

2024, which was prepared by defendant's brother. The statement asserted that the firearm seized in the instant case belonged to defendant's brother, who had placed it in a drawer in the residence the day before it was seized "without anybody [*sic*] knowledge." The court found there was not a "sufficient change in circumstances that would mitigate the dangerousness standard that this Court *** previously found exists under the circumstances."

¶ 11　　　　On October 20, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). In the motion for relief, defendant argued that the State failed to show at the initial detention hearing that he posed a real and present threat to the safety of the community or that no conditions of release could mitigate any threat he posed. Defendant also argued that the trial court failed to articulate in sufficient detail in either its oral pronouncement or the written detention order its finding that his release posed a real and present threat to the safety of the community or that no condition or combination of conditions could mitigate any such threat. Defendant requested that he be released with reasonable conditions, including GPS-monitored home confinement; warrantless searches of his person, home, and property; substance abuse treatment; abstinence form intoxicating substances; and random drug testing. Defendant argued there was substantial evidence that he would comply with these conditions, as he completed electronic monitoring and various treatment programs while released on parole prior to his arrest in the instant case, and he completed educational courses during pretrial detention.

¶ 12　　　　On October 29, 2025, the trial court held a hearing on defendant's motion for relief. During the hearing, defense counsel noted that after the original detention hearing, defendant's brother claimed ownership of the gun found in defendant's residence. Counsel argued that the court improperly based its finding of dangerousness solely on the charged

offenses. Counsel also argued that there were conditions of release that could mitigate any threat posed by defendant, like home confinement and random searches of defendant's home.

¶ 13 The trial court denied the motion for relief. The court found the State had proven by clear and convincing evidence that defendant posed a real and present threat to the safety of the community. The court stated: "And that can be summarized and concluded based on his participation in the narcotics trade alone. The presence of the firearm does not help, but it's also not necessarily conclusive of whether or not this person presents as a danger because the narcotics sufficiently conclude that he does." The court further stated: "[H]aving those types of narcotics in the amount presented in the record clear[ly] and convincingly establishes that this person is a threat to the community." The court found that defendant's history of failing to abide by conditions of release while on parole showed that he would not comply with conditions of release imposed by the court and that such conditions would not be sufficient to mitigate the danger he posed.

¶ 14 This appeal followed.

¶ 15 II. ANALYSIS

¶ 16 On appeal, defendant has filed a memorandum pursuant to Rule 604(h), in which he argues that the trial court erred by finding that he "posed a threat to the safety of *** [the] community that could not be mitigated by conditions of pretrial release." *Id.* Specifically, defendant argues that drug sales are not a threat to the safety of the community within the meaning of section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2024)). Defendant further contends that any threat of violence he posed due to his criminal history and the gun found in his residence could be mitigated by conditions of pretrial release, including GPS monitoring.

¶ 17 All defendants are presumed eligible for pretrial release. *People v. Morgan*, 2025

IL 130626, ¶ 24; 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024). However, a trial court may deny pretrial release when the State files a verified petition and proves by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case;" and (3) no condition or combination of conditions of pretrial release can mitigate this threat. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024); see *Morgan*, 2025 IL 130626, ¶ 24. Detention decisions must be individualized, "and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2024). Where, as here, the parties proceeded solely by proffer and/or documentary evidence in the trial court, the standard of review is *de novo*. *Morgan*, 2025 IL 130626, ¶ 51.

¶ 18 Section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2024)) contains a nonexhaustive list of factors trial courts may consider in determining dangerousness. That section provides:

"The court may, in determining whether the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, consider, but shall not be limited to, evidence or testimony concerning:

(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history

indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the

defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.*

¶ 19 This court previously held in *People v. Woods*, 2024 IL App (4th) 240190, ¶ 20, that trial courts may also consider the generalized risk of societal harm from drug crimes, in conjunction with other factors, in determining whether a defendant poses a real or present threat to the safety of the community. The *Woods* court held: "The societal harm from drug crimes is well-established in Illinois law, meaning the baseline question of whether the sale of drugs is a threat to the community has been answered." *Id.* The *Woods* court declined to answer the question of whether the generalized risk of societal harm from drug crimes was enough to prove a defendant posed a real and present threat to the safety of the community. *Id.* ¶ 21. The court found there were additional factors in that case demonstrating the defendant's dangerousness, including the defendant's criminal history and the nature and circumstances of the offense. *Id.*

¶ 20 Here, defendant argues that the trial court erred by concluding that the possibility he would sell drugs alone constituted a threat to the safety of the community and *Woods* was wrongly decided to the extent that it held it was permissible for the court to make such a finding. Defendant asserts that "[o]rdinary usage and the structure of the pretrial release statute indicate that the 'threat to *** safety' is a risk of some sort of criminal violence." Citing the doctrine of *ejusdem generis*, defendant contends that both the statutory factors to be considered in determining dangerousness (see 725 ILCS 5/110-6.1(g) (West 2024)) and the fact that most of the offenses for which detention can be ordered on dangerousness grounds are violent (see *id.* § 110-6.1(a)) show that the "core meaning" of the term "safety" in the statute is safety from physical harm. See *People v. Davis*, 199 Ill. 2d 130, 138 (2002) ("The doctrine of *ejusdem generis* provides that when a statutory clause specifically describes several classes of

persons or things and then includes 'other persons or things,' the word 'other' is interpreted as meaning 'other such like.' ").

¶ 21   We decline to depart from *Woods*. While we agree with defendant that many of the dangerousness factors in section 110-6.1(g) of the Code relate to the threat of physical violence, the statute states that the trial court "shall not be limited to" considering only these enumerated factors. 725 ILCS 5/110-6.1(g) (West 2024). Neither the language of the statute nor the doctrine of *ejusdem generis* necessitates a finding that the trial court may not consider the generalized risk of societal harm from drug crimes, along with other factors, to determine that a defendant poses a real or present threat to the safety of the community.

¶ 22   Accordingly, we conclude that the trial court properly determined in this case that defendant posed a real or present threat to the safety of the community. Law enforcement officers located large quantities of methamphetamine and cocaine in defendant's residence, as well as money that had been used in a prior controlled buy. The State's evidence also showed that defendant had access to a gun. While defendant's brother later claimed ownership of the gun seized in this case, defendant still had access to it, as it was in his residence. Moreover, defendant had two prior felony convictions for weapon-related offenses, and he was on parole at the time of the instant offense.

¶ 23   While the trial court stated at the hearing on defendant's motion for release that defendant's participation in the narcotics trade "alone" was sufficient to establish his dangerousness, we are not bound by the court's reasoning. See *People v. Brown*, 2022 IL App (4th) 220171, ¶ 9. Here, as in *Woods*, there were additional factors supporting a finding of dangerousness, including defendant's criminal history and access to a firearm. These factors, taken together, established that defendant posed a real and present threat to the safety of the

community.

¶ 24    We also find the trial court did not err by determining the threat posed by defendant could not be mitigated by any combination of conditions of pretrial release. Section 110-5(a) of the Code (725 ILCS 5/110-5(a) (West 2024)) provides that, in determining which conditions of pretrial release, if any, will reasonably ensure the safety of the community, the court shall consider factors, including, *inter alia*, the nature and circumstances of the offense, the weight of the evidence against the defendant, and the history and characteristics of the defendant, including whether the defendant was on parole at the time of the offense.

¶ 25    Here, defendant was on parole for a weapon-related offense at the time of the charged offenses. Law enforcement officers located a gun and large amounts of methamphetamine and cocaine in defendant's residence, as well as other controlled substances. The charged offenses were committed in defendant's home while he was already subject to supervision on parole, which demonstrated that defendant was willing to engage in unlawful and dangerous behavior even when subject to conditions of release. Thus, the trial court properly found that no conditions of release, including GPS monitoring and home confinement, could mitigate the risk he posed to the safety of the community.

¶ 26    Finally, we note that, in the motion for relief, defendant challenged the adequacy of the trial court's findings in support of its denial of pretrial release both in its oral pronouncement and written detention order. However, in his memorandum, defendant does not argue this point or indicate whether he is advancing this argument on appeal, as required by Rule 604(h)(7). Accordingly, we find defendant has abandoned this issue and do not address it. See *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21.

¶ 27    III. CONCLUSION

¶ 28  For the reasons stated, we affirm the trial court's judgment.

¶ 29  Affirmed.